**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**Southern Division**

**MARK WILLARD**          *

         **Plaintiff**          *

         **v.**          *          **Case No. DKC 06-167**

**BAUER CORPORATION, et al.**          *

         **Defendants**          *

**\* \* \* \* \* \***

## MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTION TO CONDUCT DESTRUCTIVE TESTING

Pursuant to the referral of this case to me for resolution of discovery disputes, the Court has received Plaintiff's Motion to Conduct Destructive Testing of Ladder ("Plaintiff's Motion") (Docket Item No. 50). The Court has reviewed Plaintiff's Motion, related memoranda, and opposition thereto. No hearing is deemed necessary. Local Rule 105.6 (D. Md.). The Court hereby GRANTS Plaintiff's Motion.

## I. BACKGROUND

A. Overview of the Case and Present Issue

This product liability action arises from Plaintiff's fall in December of 2002 from a fiberglass ladder ("the Ladder") manufactured by Defendant Bauer Corporation ("Defendant Bauer"). Plaintiff contends that his fall was caused by a defect in the Ladder, causing it to collapse under his pressure. Plaintiff further claims that he sustained injuries from the fall.

After Plaintiff's fall, Plaintiff placed the Ladder in storage and did not retrieve it for approximately nine months, when he decided to pursue claims against Defendants. During the

period of time in which the Ladder was in storage, attempts to repair it were made.  By virtue of the repairs and time elapsed, various spreader bar rivets, including those that Plaintiff contends were defective, were not preserved.

Because the rivets were not preserved, Plaintiff felt it necessary to conduct destructive testing of the Ladder in order to obtain necessary evidence.  Destructive testing was apparently scheduled, canceled, and then rescheduled for November 6, 2006, two days before the close of discovery.  Plaintiff circulated a protocol of the destructive testing in August of 2006 and a revised protocol on approximately October 30, 2006.  Plaintiff circulated the revised protocol after Defendants designated experts pursuant to Fed. R. Civ. P. 26(a)(2).[1]  The revised protocol indicated that Plaintiff intended to cut out small ladder sections surrounding selected rivets and to conduct testing of the rivets and fiberglass.

Plaintiff, Plaintiff's experts, and Defendants appeared for destructive testing on November 6, 2006 in Delaware.  None of Defendants' experts were present.  Defendant Bauer agreed to the removal of one sample rivet without cutting through surrounding portions of the Ladder.  This rivet was forcibly pushed out from behind.  Plaintiff's expert concluded that this process was not a satisfactory method for testing as it damaged the rivet in the removal process.  Although examination of this rivet revealed some fractures consistent with a manufacturing defect, the trauma to the rivet in the removal process rendered this conclusion questionable.  Plaintiff contends that the only sufficient way to adequately test the rivets without inflicting similar trauma would be to remove them by cutting them out of the Ladder.  Defendant did not

_____

[1]Plaintiff and Defendant agreed to an extension of time to serve expert designations.  The deadline was extended to October 25, 2006.

agree to this further testing on the grounds that cutting the Ladder would compromise its integrity.

Plaintiff contends that, in an attempt to obtain Defendants' agreement to further testing on November 6, 2006, he offered to stipulate to the pre-testing condition of the Ladder and to permit Defendants to take photographs or videos to demonstrate its weight-bearing capacity.  As Defendants still did not agree to such testing, no further testing occurred at that time.  Plaintiff filed the present motion, seeking an Order of the Court permitting Plaintiff to carry out further destructive testing, including cutting the remaining rivets out of the Ladder so as to prevent the type of damage previously caused by forcing them out.

B.  Plaintiff's Motion

Plaintiff maintains that the Ladder failed due to a defect in the area of the fractured rail and missing rivets, causing him to fall and injure himself.  Because the spreader bar rivets present at the time of the fall are no longer available, Plaintiff claims a need to perform tests on the remaining rivets.  Plaintiff contends that other less-intrusive means have been attempted without success and that Plaintiff's engineering expert indicates the only adequate method for examining the rivets is to cut out the rivets while they are intact, so that they may be subject to electronic microscopy and metallurgic testing.

Plaintiff cites to *Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611 (D. Md. 2006), arguing that the present case satisfies the requirements set forth therein.  Plaintiff asserts the requested testing is reasonable, necessary, and relevant as the only method by which Plaintiff can obtain evidence to present to a jury that it is more likely than not that the Ladder collapsed

due to its defective condition.  Plaintiff contends the expert cannot render his opinion to any

degree of certainty without first conducting the type of destructive testing Plaintiff seeks.

Plaintiff also argues that there is no prejudice to Defendants.  Plaintiff has offered to

stipulate to the Ladder's weight-bearing capacity and to permit Defendants to take photographs

or make videotapes for presentation at trial.  Thus, Plaintiff contends that, with such devices,

Defendants can achieve the same purpose at trial as they could with the Ladder present.

C.  Defendant Bauer's Response

Defendants argue that additional destructive testing would be futile, as previous

destructive testing has already demonstrated that the Ladder does not contain any of the alloy

aluminum rivets that had been recalled by Defendant Strnad.[2]  Defendants argue that this new

request is nothing more than a fishing expedition and that Plaintiff's expert has already said that

he cannot offer any opinion regarding the missing rivets because he has not had the opportunity

to examine them.  Specifically, they argue that, no matter what the testing reveals, Plaintiff's

expert will still have no opportunity to examine the missing rivets and that expert testimony must

be founded on scientific knowledge and not mere speculation, pursuant to *Daubert v. Merrell*

*Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

Defendants also assert that the controlling case of *Mirchandani*, does not support

Plaintiff's request because the facts and analysis are "generally inapplicable."  They argue that in

the *Mirchandani* case, no previous destructive testing had occurred and the non-movants had

objected to all destructive testing while, in the present case, Defendants have already voluntarily

_____

[2]Since the filing of Plaintiff's Motion, Defendant Strnad has been dismissed from this
case as a defendant.

permitted some destructive testing and Plaintiff is simply unsatisfied with the result.  Defendants

further contend that, even if *Mirchandani* is applicable to the present case, the requested

destructive testing is not necessary or relevant, and would be too prejudicial to Defendants'

ability to demonstrate the viability of the Ladder.

Finally, Defendant Bauer argues that Plaintiff's Motion is not timely filed and that

Plaintiff has impermissibly changed his case theory.  Defendant Bauer contends that Plaintiff's

theory of the case has been that recalled Strnad rivets were present in the Ladder and caused the

collapse, and that now Plaintiff is searching for a new case theory because the previous theory

has been defeated.

D.  Plaintiff's Reply

Plaintiff asserts that Plaintiff's Motion is not for "additional" destructive testing but

necessary because the method for removing rivets of which Defendant Bauer does approve

results in damage to the rivets.  Plaintiff argues that Defendant Bauer incorrectly assumes that

Plaintiff's expert cannot determine the defective nature of the Ladder, but that further testing is

required to determine whether or not the rivets in the Ladder were defective in a manner that

could result in failure of the rivets and collapse of the Ladder irrespective of who manufactured

the rivets.  Plaintiff also indicates he has not changed case theories; to the contrary, Plaintiff still

maintains that, regardless of the manufacturer of the rivet, the Ladder failed due to defect in the

area of the fractured rail and missing rivets.  Plaintiff suggests that the evolution in Plaintiff's

theory was partly due to Defendant Bauer's failure to provide answers to document and

interrogatory requests because he had no basis to determine what company had manufactured the

rivets.

Likewise, Plaintiff asserts that Defendant Bauer's objection based on timeliness is misplaced and unfair.  Plaintiff had been trying to schedule the destructive testing since September, but was unable because Defendant Bauer changed counsel and did not respond to interrogatories and requests for documents.  Further, Defendant Bauer had indicated to Plaintiff that it would allow testing past the discovery deadline.  Finally, all of Defendants' counsel were provided with a copy of the protocol for destructive testing before its November 6, 2006 date, yet their experts failed to attend, and Defendant Bauer's counsel prevented Plaintiff from fully exercising the destructive testing as planned for by Plaintiff in the protocol.

## II. DISCUSSION

### A.  Timeliness of Plaintiff's Motion

Before addressing the merits of Plaintiff's Motion, the Court must address Defendant Bauer's concerns with Plaintiff's Motion having been filed after the close of discovery.  The Court finds that, although discovery has closed, Plaintiff has demonstrated cause for the Court to extend the discovery deadline only to include the destructive testing requested by Plaintiff's Motion.

This Court recognizes that the Scheduling Order provides that the filing of a motion to compel or motion for a protective order will not result in a general extension of the discovery deadline.  However, it is within the Court's discretion to extend any pretrial deadline, including discovery deadlines.  *Lendingtree, Inc. v. Lowermybills, Inc.*, No. 05CV153-C, 2006 WL 2443685, at *2 (W.D.N.C. Aug. 22, 2006) (citing *Heyman v. M.L. Marketing Co.,* 116 F.3d 91, 96 (4th Cir. 1997); *LoneStar Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929

(4th Cir. 1995)).  Here, the Court finds that Plaintiff's failure to act within the time required has

been the result of excusable neglect.  Fed. R. Civ. P. 6(b)(2).

On the facts presented to this Court, Plaintiff requested destructive testing well before the

close of discovery.  Plaintiff indicates that he first requested testing in August of 2006, and upon

Defendants' response, shortly thereafter provided a protocol to Defendants.  Defendant Bauer's

change in counsel impacted the capacity for the testing to occur at that time.  Plaintiff also

indicates that because Defendants requested additional time to file Rule 26(a)(2) designations in

order to be able to inspect the Ladder, Plaintiff's revised protocol with the additional information

requested by Defendants was not circulated until after that date.  Testing was scheduled for

November 6, 2006.

The Court takes into consideration the fact that Plaintiff believed he could carry out the

necessary testing, with the consent and presence of Defendants, before the discovery deadline of

November 8, 2006, and that Plaintiff's plan was halted during the testing.  Although Defendant

Bauer sees Plaintiff's Motion as a request for "additional" destructive testing, the Court

understands the situation differently.  The purpose of Plaintiff's destructive testing on November

6, 2006 was to obtain a detailed examination of rail fiberglass and rivets removed from the

Ladder.  The protocol of October 30, 2006, indicated that cutting away of portions of the

fiberglass rail and other sections of the Ladder would occur.  On the day of the testing, Plaintiff

was prevented from carrying out certain steps of the circulated protocol, such as step three:

"[c]ut out small ladder sections surrounding other selected rivets."[3]  The inability to carry out the

---

[3]Plaintiff wisely ceased testing upon Defendants' objections; proceeding to destructively test the Ladder without Court authorization may have subject Plaintiff to accusations of spoliation of the evidence or dismissal of his case.  *Mirchandani*, 235 F.R.D. at 613.

protocol is the reason for Plaintiff's Motion, thus Plaintiff's Motion is better described as a request to complete scheduled testing than it is a request for additional testing.

This Court also considers the apparent cooperative nature of Defendant Bauer's counsel as demonstrated in the e-mail dated October 27, 2006.  In that e-mail, Defendant Bauer's counsel indicated that an extension of the discovery deadline would be appropriate and that testing carried out after November 6, 2006 would also be acceptable to Defendant Bauer.  *See* Docket Item No. 58, Exhibit B.  Having already agreed to an extension, Defendant Bauer's argument, which suggests that Plaintiff's Motion should be denied in part because discovery has already closed, is disingenuous and prejudicial to Plaintiff.  The rules of discovery, as propounded in the Federal Rules of Civil Procedure as well as in the Local Rules for the District of Maryland, encourage cooperative behavior.  To penalize Plaintiff under these circumstances would be inconsistent and unfair.

After Defendant Bauer prevented Plaintiff from continuing with Plaintiff's destructive testing on November 6, 2006, Plaintiff promptly filed Plaintiff's Motion.[4]  In consideration of the totality of these circumstances, the Court finds that Plaintiff has exhibited excusable neglect in failing to move for an extension prior to the close of discovery.  The Court finds, *sua sponte*, that good cause exists for extending the discovery deadline and GRANTS an extension of the discovery deadline solely for purposes of conducting the destructive testing sought by Plaintiff.

---

[4]The *Mirchandani* Court found that a motion for destructive testing is more properly viewed as a motion for protective order under Fed. R. Civ. P. 26(c), as no request for production is actually propounded.  235 F.R.D. at 613.  Under that definition, Plaintiff's Motion would not be subject to the filing requirements of Local Rule 104.8.  Nonetheless, even if Plaintiff's Motion was subject to Local Rule 104.8, it was still filed within thirty days after Defendants' objections as would have been required.

B.  Analysis

In ruling on a motion for destructive testing of evidence, the Court should consider four factors: (1) whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; (2) whether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way; (3) whether there are any less prejudicial alternative methods of obtaining the evidence sought; and (4) whether there are adequate safeguards to minimize the prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial.  *Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611, 614 (D. Md. 2006).  The Court finds that a consideration of the foregoing factors weighs in favor of destructive testing of the Ladder and therefore GRANTS Plaintiff's Motion.

The Court is not persuaded that the present case is distinguishable from *Mirchandani.* Defendant Bauer argues that because it permitted some destructive testing in the present case, and in *Mirchandani* the non-movants had permitted none, this case is distinct.  The Court does not find that Plaintiff was permitted to follow through with the protocol to the extent proposed. However, even if Defendant Bauer's assertion were true, it would not be issue dispositive.

In fact, the *Mirchandani* court indeed contemplated an instance in which prior testing may prevent the Court from ordering  further destructive testing.  The *Mirchandani* court discussed *Dabney v. Montgomery Ward & Co, Inc.*, 761 F.2d 494 (8th Cir. 1985), in which the trial court did not allow destructive testing of furnace louvers, partly because prior testing of other parts of the furnace had occurred.  *Mirchandani*, 235 F.R.D. at 614.  Two factors weighed against granting additional destructive testing when prior destructive testing had occurred.  First, the movant had not claimed that the additional testing of the louvers would provide new

evidence necessary for its defense.  Second, the movant's expert was already able to offer an opinion without the additional destructive testing requested.

Plaintiff, on the other hand, has demonstrated that neither of these two factors have been met.  Plaintiff claims that the additional testing will provide new evidence for his claims, which the Court found absent in *Dabney*.  Indeed, Plaintiff claims that the requested destructive testing will be the only manner of providing evidence necessary for his claims, as the testing that was starting on November 6, 2006, provided unusable results due to the destruction of the rivets.  The Court finds that the occurrence of some prior destructive testing does not require the denial of additional testing on the facts of this case.

> 1.  *The proposed testing is reasonable, necessary, and relevant to proving Plaintiff's case.*

The "reasonable, necessary, and relevant" requirement, although only the first prong, encapsulates various elements.  The term "reasonable" signifies different things in different areas of case law.  Neither the case law leading to the *Merchandani* case, nor the *Merchandani* case itself provides a clear standard for "reasonableness."  235 F.R.D. at 614.  This Court believes that the standard definition of reasonableness is appropriate in the present case, meaning that which is "fair, proper, just, moderate, [and] suitable under the circumstances."  6 *Black's Law Dictionary* 1265 (1990).  Similarly, other cases addressing this first prong of the analysis "demonstrate that a party may not use destructive testing merely to bolster an expert opinion or to gain other potential intriguing, albeit irrelevant, information."  *Merchandani*, 235 F.R.D. at 615.  Thus, what is fair, proper, just, and moderate also relates to the balance between the necessity for the additional information and preventing one party from obtaining an upper hand or extra potential information for the trial.  In the present case, Plaintiff does not seek to bolster

the opinion of Plaintiff's expert or gain some kind of unfair advantage.  Based on these circumstances, the Court finds the destructive testing to be reasonable.

For very similar reasons, the Court finds that Plaintiff's request is necessary.  As Plaintiff indicates, other less intrusive means have been attempted, unsuccessfully.  Plaintiff attempted to remove a rivet by punching it out from the rear, shank end, but the integrity of that rivet was compromised in the process.  Plaintiff's expert indicates that the only adequate means for properly testing the rivets is to cut them out intact and subject them to electronic microscopy and metallurgic testing without their integrity having been compromised.

Defendant Bauer argues that an order compelling destructive testing of the Ladder "is no more than a request for a court sanctioned fishing expedition."  Nonetheless, while Plaintiff "must show that the evidence sought through destructive testing is necessary to prove their case . . . , the burden is not so high as to require definitive proof that plaintiff's hypothesis will prove correct.  In other words, plaintiffs need not prove their case for the opportunity to prove their case."  *Mirchandani*, 235 F.R.D. at 615.  Plaintiff asserts that when the test rivet was removed on November 6, 2006, it revealed a crack in the metal consistent with a manufacturing defect.  However, the probative value of this crack is undermined by the trauma inflicted on the rivet in the process of removing it.  The fact that Defendant Bauer believes destructive testing will be futile is not, at this point, sufficient to defeat Plaintiff's supported claim that further testing may support his theory.[5]

---

[5]Defendant Bauer also asserts that any evidence obtained by Plaintiff will be inadmissible per the rule of *Daubert v. Merrel Dow Pharmaceuticals,* 509 U.S. 579 (1993).  The Court believes this is a fair issue for discovery.  "The fact that defendants' experts do not believe that the proposed destructive testing will enable plaintiffs to prove their case is irrelevant at this stage of the litigation."  *Mirchandani*, 235 F.R.D. at 615.

Plaintiff's burden is to present evidence to the jury that it is more likely than not that the defective condition of the Ladder caused the Ladder to collapse.  Without the destructive testing Plaintiff seeks, the expert cannot render an opinion to a substantial degree of certainty.  Plaintiff has established that the testing is necessary.

Finally, the destructive testing Plaintiff requests is also relevant.  Defendant Bauer argues that Plaintiff's theory of liability has impermissibly changed, and that the new evidence Plaintiff seeks relates to a new case theory.  Nonetheless, Plaintiff's Complaint states that Defendant Bauer manufactured and sold a ladder that was unreasonably dangerous and defective and that Bauer sold this ladder in its unreasonably dangerous condition.  Likewise, Plaintiff's Complaint claims that Defendant Fastenal sold rivets in a defective condition to Defendant Bauer.  Although Strnad is no longer a defendant in this case, Plaintiff maintains that Defendants were liable for their contribution to selling Plaintiff a defective product.  While perhaps Plaintiff's pleadings did not define the liability to the degree desired by Defendant Bauer, all pleadings are to be so construed as to do substantial justice.  Fed. R. Civ. P. 8(f).  A review of Plaintiff's Complaint defines Defendant Bauer's liability in terms general enough to not require him to adhere to a theory solely dependant upon Defendant Bauer's use of Defendant Strnad's rivets.  Whether Plaintiff is changing horses in the middle of the race is left to the sound discretion of the trial judge.  Thus, the Court does not agree with Defendant Bauer's contention that the destructive testing is an irrelevant fishing expedition.

2. *The potential prejudice to Defendants is minimized.*

The question of whether to allow for destructive testing is more difficult when the object to be tested is unique and a party intends to use the object at trial. *Mirchandani*, 235 F.R.D. at 615 (citing *Cameron v. District Court*, 565 P.2d 925, 929 (Colo. 1977)). Nonetheless, when the jury can still view the general condition of the object and its original condition through photographs, prejudice against the non-moving party is minimized. *Id.* A material change, even when the object is to be presented at trial, is not sufficient to prevent destructive testing. *Id.* at 616.

Defendant Bauer argues that it will be seriously prejudiced by its inability to demonstrate the viability of the Ladder before the jury and that the jurors will be faced with the Ladder in a radically altered and seriously compromised form. Defendant Bauer asserts that this will leave the jury in no position to adequately assess the Ladder. However, the *Mirchandani* court found that while such demonstrations are helpful, similar experiments can be videotaped and discussed through expert testimony. This Court agrees. The issue is whether depriving Defendant Bauer of a live jury presentation is enough to outweigh the benefits of providing Plaintiff the ability to test the rivets in the capacity Plaintiff seeks. *See Mirchandani*, 235 F.R.D. at 616. The Court finds that it is not. Defendant Bauer may still present its demonstration by videotape and through expert testimony, making the prejudice to Defendant minimal.

3. *Neither party has demonstrated other non-destructive alternative methods.*

On November 6, 2006, Plaintiff attempted to implement a less destructive alternative method by punching a test rivet out of the Ladder. Nonetheless, this rivet was arguably compromised during the removal process. Neither party has suggested any other means for

-13-

testing the rivet without compromising its integrity.  Because neither side has offered an alternative method, the Court finds that Plaintiff has satisfied this prong of the analysis.

        *4.  Adequate safeguards exist for minimizing prejudice to Defendant Bauer.*

Plaintiff has already agreed to permit Defendant Bauer to videotape and photograph the Ladder in its present condition for presentation at trial.  This Court finds these safeguards adequate to minimize prejudice to Defendant Bauer.  Nonetheless, the Court will consider other safeguards upon Defendant Bauer's request, such as requiring Plaintiff to fully videotape the test from inception to conclusion, providing Defendant Bauer the opportunity to depose Plaintiff's experts about the testing procedures and results of the test, or any other reasonable safeguard that Defendant Bauer wishes to suggest, at Plaintiff's expense.  *See Ostrander v. Cone Mills, Inc.,* 119 F.R.D. 417, 421, (D. Minn. 1988); *Spell v. Kendall-Futuro Co.*, 155 F.R.D. 587, 588 (E.D. Tex. 1994).  In the event that Defendant Bauer wishes to request safeguards in addition to those already offered by Plaintiff, Defendant Bauer shall move this Court within ten days of the issuance of this opinion.  Plaintiff shall not conduct any destructive testing during that time frame.  If Defendant Bauer moves the Court for additional safeguards within ten days, Plaintiff shall conduct no destructive testing until all such motions have been resolved.

### III.  CONCLUSION

For the foregoing reasons, this Court GRANTS Plaintiff's Motion.

                                         _____/s/_____

                                         Charles B. Day
                                         United States Magistrate Judge
                                         January 26, 2007

CBD:acg