IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARK WILLARD                          :

                                      :

   v.                                 : Civil Action No. DKC 2006-0167

                                      :

BAUER CORPORATION                     :

                                      :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this products liability case is the motion for summary judgment by Defendant Bauer Corporation.  (Paper 54).  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, Defendant's motion will be denied without prejudice to renewal, if warranted, upon the resolution of Plaintiff's outstanding request for testing.  Also pending in this case is the motion by Defendant to strike Plaintiff Mark Willard's amended expert report and proposed testing protocol (paper 78).  This motion will be duly resolved by Magistrate Judge Charles B. Day, to whom this case has been referred for discovery.

**I.  Background**

The following statement of facts is presented in the light most favorable to Plaintiff, and is based on the evidence forecast by both parties with respect to Defendant's motion for summary judgment.  Plaintiff fell from a ladder manufactured by Defendant on December 24, 2002, and alleges that the accident was caused by a defect in the ladder which caused it to collapse.  Defendant

argues that Plaintiff lost his balance, fell from the ladder, and then landed on the ladder, damaging it.

Plaintiff was installing interior wiring for new exterior lights at his workplace, Metropolitan Meat Poultry & Seafood. Plaintiff purchased the ladder that is the subject of this suit from Brock Tools on December 23, 2002, specifically for this task. The ladder is eight feet tall, and is built with fiberglass rails connected by rivets to aluminum steps and support structures. Plaintiff first used the ladder on December 24, 2002, and the accident occurred within approximately one minute after Plaintiff first climbed the ladder. Immediately prior to the accident, Plaintiff was standing on the second step from the top, with all of his body above his thigh extending into the space above the suspended ceiling. Plaintiff was standing still, looking at an electrical box in front of and above him, and then fell and landed on the ladder. There has been no evidence as to whether Plaintiff hit or damaged the frame of the suspended ceiling as he fell. He does not remember exactly how the accident occurred, but believes that he did not lose his balance. Plaintiff sustained injuries from the accident, including an injury to his shoulder that continues to limit his physical activity.

After Plaintiff's accident, a sign was affixed to the ladder indicating that it was broken and should not be used, and it was placed in Metropolitan Meat Poultry & Seafood's repair shop.

2

Plaintiff's nephew, Charlie Willard, who managed the repair shop, was instructed to discard the ladder, but he attempted to repair it instead. His repairs, which he conducted intermittently over the next nine months, consisted of grinding out a fractured segment of the fiberglass rail, applying epoxy and replacement fiberglass to the rail, and grinding out and discarding the rivets attaching one of the spreader bars to the rail. At his deposition, Charlie Willard testified that he had to remove the spreader bar from the rail of the ladder.[1] (Paper 54, Ex. D, C. Willard Dep., at 47).

In October 2003, Defendant issued a recall for ladders it had produced between May 2002 and March 2003, which includes the period when Plaintiff's ladder was produced. The recall applied only to ladders manufactured using rivets supplied by Strnad Rivet Inc., which Defendant argues can be identified by their typical markings and by the specific aluminum alloy they contain. Defendant contends that the Strnad rivets in the recalled ladders contain a defective alloy that can fail. Plaintiff began to pursue this action after learning about the recall. Prior to learning of the recall, he had not considered whether the ladder was defective.

Plaintiff initiated this action by filing his complaint (paper 2) in the Circuit Court for Prince George's County, Maryland, on December 22, 2005. The complaint asserted products liability

---

[1] It is not entirely clear from this testimony whether both ends of both spreader bars were still attached to the ladder before Charlie Willard attempted to repair it.

claims against Defendant, as well as Fastenal Company and Strnad
Rivet, Inc.   Defendant removed the case to this court on January
20, 2006.   Under the scheduling Order issued in this case (paper
34), discovery closed on November 8, 2006.   All three Defendants
moved for summary judgment after the discovery deadline, while a
motion by Plaintiff for destructive testing of the ladder (paper
50) was pending.   On January 4, 2007, Plaintiff stipulated to the
dismissal of his claims against Fastenal Co. and Strnad Rivet Inc.
(paper 62), and this stipulation of dismissal was approved by this
court's Order, entered the same day.   (Paper 63).   Plaintiff's
motion for destructive testing was granted, subject to various
procedural protections requested by Defendant, but an ongoing
dispute as to whether Plaintiff has adequately complied with these
procedural protections is pending before Magistrate Judge Day.

## II.   Standard of Review

It is well established that a motion for summary judgment will
be granted only if there exists no genuine issue as to any material
fact and the moving party is entitled to judgment as a matter of
law.   *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322
(1986).   In other words, if there clearly exist factual issues
"that properly can be resolved only by a finder of fact because
they may reasonably be resolved in favor of either party," then
summary judgment is inappropriate.   *Anderson*, 477 U.S. at 250; *see*

4

*also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc*., 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must

be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III.   Evidence of a Product Defect

Plaintiff asserts four claims against Defendant Bauer, for negligence, strict liability, and breach of express and implied warranties.   The three product liability theories recognized in Maryland,

> strict liability, negligence, and breach of warranty . . . are all grounded in product liability, and under Maryland law, "regardless of the recovery theory, the plaintiff in product litigation must satisfy three basics from an evidentiary standpoint: 1) the existence of a defect; 2) the attribution of the defect to the seller; and 3) a causal relation between the defect and the injury."

*Redford v. SC Johnson & Son, Inc.*, 437 F.Supp.2d 391, 395 (D.Md. 2006) (quoting *Foster v. Am. Home Prods. Corp.*, 29 F.3d 165, 168 (4th Cir. 1994)).   Proof of a product defect may be through direct evidence based on an examination of the product after an accident, or through indirect evidence, if that evidence is sufficient to support an inference that the product was defective.   *Id.* (citing *Harrison v. Bill Cairns Pontiac of Marlow Heights, Inc.*, 77 Md.App. 41, 50-51 (1988)).

"It is axiomatic, however, that 'proof of a defect must arise above surmise, conjecture, or speculation . . . ; and one's right

to recovery may not rest on any presumption from the happening of an accident.'" *Harrison*, 77 Md.App. at 50-51 (quoting *Jensen v. Am. Motors Corp.*, 50 Md.App. 226, 232 (1981)).  In *Harrison*, the Court of Special Appeals of Maryland announced a five factor test to evaluate the sufficiency of indirect evidence of a product defect:

> Factors to be considered in determining whether a product defect may be inferred from circumstantial evidence include:
> (1) expert testimony as to possible causes; (2) the occurrence of the accident a short time after the sale; (3) same accidents in similar products; (4) the elimination of other causes of the accident; (5) the type of accident that does not happen without a defect.

*Id.* (quoting *Cornell Drilling Co. v. Ford Motor Co.*, 359 A.2d 822, 827 (Pa.Super.Ct. 1976), *overruled on other grounds by REM Coal Co. v. Clark Equip. Co.*, 386 Pa.Super. 401 (1989); and citing Prosser, *Law of Torts* § 103 at 673-74 (4th ed. 1971)).  The five factor test articulated in *Harrison* has been frequently applied by this court, *see, e.g.*, *Redford*, 437 F.Supp.2d at 395, and in an unpublished opinion by the United States Court of Appeals for the Fourth Circuit, *Riley v. De'Longhi Corp.*, No. 99-2305, 2000 WL 1690183 (4th Cir. Oct. 30, 2000).

The *Harrison* court did not discuss how courts applying this standard should weigh conflicting factors against one another. This court has previously explained that "[t]o the extent that a

plaintiff's showing on one or more of these factors cuts against these conclusions, then the strength of the inference of a defect weakens and plaintiff risks the entry of summary judgment for defendant." *Shreve v. Sears, Roebuck & Co.*, 166 F.Supp.2d 378, 408-09 (D.Md. 2001).  Courts have granted summary judgment in favor of a defendant when only two or fewer of the factors weighed in favor of the plaintiff, and have denied summary judgment when three or more factors weighed in the Plaintiff's favor.  *See Redford*, 437 F.Supp.2d at 395-96 (citing cases).

Defendant argues that summary judgment is appropriate if even one of the five *Harrison* factors does not favor Plaintiff.   In making this argument, Defendant contends that the *Harrison* court dismissed the plaintiff's products liability claims only because the plaintiff could not show that the accident in that case occurred within a short time after the product was purchased.  The *Harrison* court, however, concluded not that there was no defect, but that any proof that the car in that case was defective could not also prove that the car was defective when manufactured.  Other courts that have interpreted *Harrison* have held that a plaintiff can withstand summary judgment on the issue of the existence of a defect when fewer than all of the five factors favor the Plaintiff, and in the aggregate, these decisions suggest that only a majority of the five factors must weigh in favor of a plaintiff.   *See Redford*, 437 F.Supp.2d at 395-96 (citing cases).

In this case, Plaintiff argues that, construing the facts in his favor, all of the factors either presently favor him, or that his proposed destructive testing could discover evidence that would cause them to favor him.   Defendant argues that at most one of the five factors favors Plaintiff.

The first factor under *Harrison* directs the court to consider the presence of "expert testimony as to possible causes."   The Fourth Circuit has explained a persuasive rationale why such expert testimony should be judged against a substantially less-rigorous standard than expert testimony in a case based on direct evidence:

> First, the *Harrison* analysis is used to establish a circumstantial case when there is no direct evidence of a product defect.  *See Watson [v. Sunbeam Corp.]*, 816 F.Supp. [384] at 388 [(D.Md. 1993)] (noting the "significant distinction . . . between the evidence necessary to 'directly prove' a causal design defect and the lesser evidence required to meet the 'possible cause' factor of the *Harrison* indirect scheme of proof").   In a circumstantial case the "plaintiff need not explain specifically what constituent part of the product failed."  Restatement (Third) of Torts: Products Liability § 3 cmt. c.  . . . Second, the first *Harrison* factor only requires testimony as to possible causes."

*Riley*, 2000 WL 1690183, at *3.   In *Riley*, the plaintiff's expert concluded to a reasonable degree of engineering certainty that a fire started in the product at issue, and testified that in his opinion one of two components of the product were likely at fault. *Id.*   This testimony was sufficient for this factor to favor the

plaintiff, because it included testimony about a *possible cause* of the accident and identified the product as the likely cause. *Id.*

Plaintiff's expert, Norman Johanson, concluded in his initial report that rivets attaching the right side spreader bar to the fiberglass rail had failed, causing the ladder to collapse. (Paper 55, Ex. F, at 3). In his second report, in which he was required to list any theory of liability that Plaintiff would later seek to advance, Mr. Johanson contends that either rivets or the surrounding fiberglass of the ladder was defective and failed, causing it to collapse.[2] Mr. Johanson conceded that he could not examine the rivets that Charlie Willard removed, and thus cannot offer any opinion about their condition. (Paper 55, Ex. I, Johanson Dep., at 38). His opinion that the ladder failed and that the failure was likely caused by defects in the rivets or the surrounding fiberglass is sufficient, despite this concession, to satisfy the first factor. *See Riley*, 2000 WL 1690183, at *3.

Defendant challenges the admissibility of this opinion, alleging that Mr. Johanson has no factual basis to support it. Plaintiff's second expert report has been filed in conjunction with the additional protections regarding the destructive testing and

---

[2] Defendant has moved to strike Plaintiff's amended expert report. (Paper 78). The court expresses no opinion as to the merits of this motion, which is pending before Magistrate Judge Charles B. Day. Because Defendant's motion for summary judgment is pending while this discovery dispute is outstanding, however, any doubts as to the final content and support for Plaintiff's expert report must be resolved in Plaintiff's favor at this time.

contemplates that the results of the destructive testing will provide part of its basis. Thus, it is premature to resolve this evidentiary objection until the dispute regarding the request for destructive testing is resolved and any destructive testing is completed. Because Defendant has not met its burden of showing that Plaintiff would not be able to make an adequate showing as to this factor after the destructive testing, this factor cannot be resolved against Plaintiff until the requested discovery is completed.

The second factor concerns whether the accident at issue occurred "a short time after the sale" of the allegedly defective product. In this case, Defendant concedes that the accident occurred only one day after Plaintiff purchased the ladder, and within approximately one minute after he first used it. Accordingly, this factor strongly favors Plaintiff.

The third factor concerns whether the same accident has occurred in similar products. In this regard, Plaintiff points to the fact that Defendant recalled ladders, including the model that Plaintiff purchased, that include rivets manufactured by Strnad Corporation. Defendant contends these rivets contain a defective metal alloy that can fail under some circumstances.[3] Plaintiff

_____

[3] Plaintiff tested at least one of the rivets remaining in the ladder and found that it did not contain the alloy that Defendants indicate is present in the defective rivets. Defendant asserts that Plaintiff has tested the composition of all of the remaining rivets in the ladder.

points to at least one other recent lawsuit alleging that one of Defendant's ladders was defective, but has not produced any evidence relating to the cause of the accident in that case to support an inference that the accidents or the products were similar. Without such evidence, it appears unlikely that Plaintiff will be able to prevail under this factor. Until any destructive testing is completed, however, it would be inappropriate to determine whether such testing will reveal a theory of defect that might also apply to other accidents involving Defendant's ladders.

The fourth factor, "the elimination of other causes of the accident," concerns whether other possible causes of the accident, "such as product misuse or alteration" can be ruled out. *Harrison*, 77 Md.App. at 50-51. There is no evidence that Plaintiff was misusing the ladder, or that it was altered prior to the accident. The only other potential cause of the accident identified by Defendant and its expert, Thomas Bayer, is that Plaintiff lost his balance and therefore fell from the ladder, causing any damage to the ladder when he landed on it. (Paper 55, Ex. H, Bayer Report, at 3). Plaintiff's own deposition testimony was that he was standing still at the time of the accident and that he did not lose his balance, which tends to refute this theory. (Paper 55, Ex. B, M. Willard Dep., at 73, 76, 105). Viewing the forecast evidence in the light most favorable to Plaintiff, a jury could credit his testimony and therefore exclude the only other potential cause of

the accident.  Because all factual disputes must be resolved in Plaintiff's favor on a motion for summary judgment, this factor favors Plaintiff for purposes of this motion.

The fifth factor asks whether the accident is of a type that would not normally occur in the absence of a defect.  It is unclear whether a Plaintiff's evidence tending to eliminate other potential causes of the accident should be taken as true in evaluating this factor. *See Riley*, 2000 WL 1690183, at *5.  Although neither party specifically addressed this issue, the better approach is to take the evidence as true, at least, as here, when the fourth factor favors the Plaintiff.  Under this approach, the fourth factor does not merge with the fifth factor.  The fourth factor considers whether the product has been isolated as the cause of the accident. The fifth factor weighs whether the product, to the extent it caused the accident, is likely to have done so because of a defect.

Crediting Plaintiff's testimony that he was standing still on the ladder immediately prior to the accident and did not lose his balance, Plaintiff's expert opined that it would be highly unusual for a ladder to fail, in the absence of a defect, if a person had just climbed it and was standing stationary.  (Paper 55, Ex. I, Johanson Dep., at 39-40).  There is at least a dispute of fact between Mr. Johanson and Mr. Bayer as to whether, based on common sense and engineering principles, such an accident is likely to occur, absent a defect, to a ladder user who was standing still and

did not sense that he had lost his balance.  Defendant objects to the admissibility of Mr. Johanson's expert opinions regarding the cause of the accident, asserting that he lacks a factual basis for his conclusions regarding the collapse of the ladder Plaintiff purchased.  This objection does not address the admissibility of Mr. Johanson's testimony regarding whether ladders typically fail in the absence of a defect, however, because this testimony appears to be based on Mr. Johanson's general expertise, independent of his examination of the ladder in this case.[4]  As a result, the fifth factor favors Plaintiff at this stage of the litigation.

Plaintiff has come forward with sufficient evidence that a trier of fact could find in his favor as to the second, fourth, and fifth factors under *Harrison*.  The two remaining factors cannot be resolved because they could favor Plaintiff depending on the results of the disputed destructive testing.  A showing as to only three factors is sufficient to satisfy the standard set by *Harrison*.  *See Redford*, 437 F.Supp.2d at 395-96.  Accordingly, Plaintiff has met his burden to come forward with sufficient evidence to defeat Defendant's motion for summary judgment with respect to the issue of whether the ladder was defective.

In addition to showing that the ladder was defective, Plaintiff must also demonstrate that the defect claimed was

---

[4] As discussed above, Defendant's objection cannot be resolved until the full basis for Mr. Johanson's opinion, including any destructive testing that may occur, is fully developed.

14

attributable to Defendant and that the defect caused Plaintiff's injury. *Redford*, 437 F.Supp.2d at 395 (quoting *Foster*, 29 F.3d at 168). Defendant has not addressed either of these issues as grounds for its motion for summary judgment. Plaintiff's evidence that the accident occurred the day after he purchased the ladder, and less than ten days after its label indicates it was manufactured, are sufficient evidence, in this context, that any defect was attributable to Defendant. Plaintiff's circumstantial case for the existence of a defect is also necessarily sufficient to support an inference that the alleged defect in the ladder caused Plaintiff's accident, and the accident is the undisputed cause of Plaintiff's injuries. Accordingly, summary judgment is not appropriate, and Defendant's motion for summary judgment will be denied.

## IV.  Spoliation of Evidence

Defendant argues that the court should dismiss this case because Plaintiff was at least negligent in failing to preserve the ladder in its post-accident condition. A district court possesses broad powers to sanction parties for spoliation, "the destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). This authority "arises from a

court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct 'which abuses the judicial process.'" *Id.* (quoting *Chambers v. NASCO Inc.*, 501 U.S. 32, 45-46 (1991). Because this authority invokes the court's inherent powers, federal common law, rather than substantive state law, governs any determination as to whether and how to sanction spoliation. *Id.* Before imposing any sanction for spoliation, "a court must find some degree of fault." *Id.*

In choosing among a range of possible sanctions, a court should consider "'the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.'" *Id.* (quoting *West*, 167 F.3d at 779). The harshest sanction, dismissal, "should be avoided if a lesser sanction will perform the necessary function." *Id.* In addition,

> to justify the harsh sanction of dismissal, the district court must consider both the spoliator's conduct and the prejudice caused and be able to conclude either (1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim.

*Id.* at 593. Although dismissal is "usually appropriate 'only in circumstances of bad faith or other 'like action[,]''" mere negligent spoliation can be the basis for dismissal under the second prong of the test articulated in *Silvestri*, if it "renders

the defendant unable to defend its case." *King v. Am. Power Conversion Corp.*, 181 F.App'x 373, 377 (4th Cir. 2006) (Unpublished Disposition) (quoting *Silvestri*, 271 F.3d at 593).

As a threshold matter, it is necessary to determine whether Plaintiff breached any duty to preserve the evidence.  The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation. *Silvestri*, 271 F.3d at 591 (citing *Kronisch v. United States*, 150 F.3d 112 126 (2d Cir. 1998)).  The record does not make clear, and neither party has addressed in its briefing, whether, at or before the time the ladder was altered, there was some reason that Plaintiff should have anticipated the possibility of this litigation.  On the other hand, it appears that the spreader bar components were lost by Plaintiff, his lawyer, or his expert at some time after this litigation was anticipated or pending, in violation of the duty to preserve this evidence.  It also appears likely that someone was negligent in losing this evidence, and the spreader bar components were in the exclusive control of Plaintiff and his agents.  It is not necessary, however, to determine whether Plaintiff is culpable in either or both incidents of alleged spoliation at this time.  As discussed below, it is not yet possible to assess the degree of prejudice Defendant may suffer from either episode of spoliation.  Accordingly, it

17

would be premature to determine whether the remedy of dismissal sought by Defendant is appropriate.

With respect to the question of whether dismissal is the appropriate remedy in this case, Defendant has presented no evidence that Plaintiff, in bad faith, encouraged Charlie Willard to attempt to repair the ladder, or that Plaintiff knew of these attempts in advance or at the time. Likewise, Defendant has forecast no evidence that missing pieces of the spreader bar were intentionally discarded, but rather only that they were lost, either by Plaintiff, his lawyer, or his expert. In the absence of any evidence of bad faith spoliation, dismissal under the first part of the standard articulated in *Silvestri* is not warranted.

Defendant argues that this case should be dismissed pursuant to the second prong of the *Silvestri* standard, because it would suffer extreme prejudice due to the altered state of the ladder and the loss of the spreader bar components, and no lesser sanction could adequately offset this prejudice. As discussed above, with respect to the sufficiency of Plaintiff's evidence of a product defect, it is not presently clear whether Plaintiff's theory of a defect at trial will focus on the failure of the ladder's rivets, its fiberglass rails, or both. Moreover, while Plaintiff's requested destructive testing remains unresolved, it is difficult to determine how much and what kind of evidence relevant to the issue of defect each party will be able to glean from the ladder in

18

its altered state.   It is noteworthy that Defendant articulates evidence in its motion for summary judgment that many, and perhaps all, of the remaining rivets in the ladder show no external signs of a defect and do not contain the same alloy that Defendant contends may be defective and has caused similar past accidents involving its ladders.

Until any destructive testing of the remaining components of the ladder is conducted, it is premature to decide what level of prejudice Defendant may ultimately suffer from the alteration and loss of some of the ladder's components.   Accordingly, Defendant's motion for summary judgment based on spoliation will be denied, without prejudice to renewal after the completion of discovery.

**V. Conclusion**

For the reasons set forth above, Defendant's motion for summary judgment will be denied.   Defendant will be granted leave to renew this motion for summary judgment if, after the outstanding discovery is resolved, a materially different record that would support summary judgment is available.   A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

19